BARBARA G. WEAVER v. ROBERT E. WEAVER

No. 8410DC99

(Filed 5 February 1985)

1. **Divorce and Alimony § 30— spouse's interest in partnership—marital property subject to distribution**

   A spouse's interest in a professional partnership is a marital asset subject to equitable distribution.

2. **Divorce and Alimony § 30— spouse's interest in accounting partnership—method of calculating value**

   In determining the equitable distribution of marital property the trial court properly calculated the present value of defendant's interest in an accounting partnership where the court used the partnership agreement's payment plan for a withdrawing partner, and then discounted future payments provided for under the plan; however, the interest rate of 4½% used to discount the payments to defendant of his partnership interest was far below the market rate, and its use produced a present value thousands of dollars in excess of the actual or market value of the money.

3. **Divorce and Alimony § 30— interest in partnership—consideration of goodwill in equitable distribution**

   Goodwill is an asset which must be valued in equitable distribution of an interest in a going concern.

4. **Divorce and Alimony § 30— actual value of partnership interest—amount discounted—interest rate used improper—appropriate rates**

   The interest rate used under G.S. 8-47 to calculate the present worth of annuities payable annually to a person during his life was not the appropriate rate to use where the trial judge applied a discount in order to find the actual or true net value of defendant's partnership interest for the purpose of making an equitable distribution of marital property; rather, reasonable rates which the court might have considered included the rate used by the IRS in determining assessments and refunds, Treasury bill rates, and the prime rate charged by banks.

5. **Divorce and Alimony § 30— distribution of marital property—interest in accounting partnership—determination of value**

   In a proceeding for equitable distribution of marital property where the trial court was required to determine the value of defendant's interest in an accounting partnership, there was no merit to defendant's contention that a

number of contingencies affected payment under the partnership agreement
and that they should be considered in valuing defendant's partnership interest,
since the contingencies defendant invoked were purely speculative; further-
more, the trial court did not err in failing to consider taxes which defendant
might have to pay on the interest in his partnership if he were to withdraw or
to consider the lower taxes his wife would pay on the house the trial judge
awarded her, since the trial court is not required to consider possible taxes
when determining the value of property in the absence of proof that a taxable
event has occurred during the marriage or will occur with the division of the
marital property.

**6. Divorce and Alimony § 30— equal division of marital property ordered—failure
to make specific findings—no error**

   Where the trial judge ordered an equal division of the net value of all
marital property except for certain personal property, and nothing in the
record indicated that he did not consider all the statutory factors in ordering
this equal division, the trial judge's failure to make specific findings on all the
factors set out in G.S. 50-20(c) was not error.

**7. Divorce and Alimony § 30— court's reliance on oral agreement to divide fur-
nishings—failure to make findings explaining equitable distribution**

   The trial court's reliance on the parties' oral agreement for division of
their household furnishings at the time of separation and his failure to make
specific findings under G.S. 50-20(c) explaining the equitable distribution of fur-
nishings was error.

**8. Divorce and Alimony § 30— piano not marital property—findings proper**

   The trial court did not err in finding that a piano, purchased by the wife
for $3,800 with marital funds, was a gift to the children of the marriage and
was not marital property of the parties subject to equitable distribution.

APPEAL by defendant from *Creech, Judge.* Order entered 5
October 1983 in District Court, WAKE County. Heard in the Court
of Appeals 23 October 1984.

The parties were married in 1960. The husband is an account-
ant and the wife is a real estate broker. On 4 September 1981
they separated.

When the parties separated, their two principal assets were
the equity in their home and the equity in the husband's account-
ing partnership. At the time of separation, the husband left the
marital home and took certain personal property with him. The
wife testified that she and her husband agreed orally to the divi-
sion of personal property when he left.

The parties owned a piano, purchased for $3,800 with the earnings of the wife during the marriage. The wife testified that this was given to and belonged to the children of the parties.

On 7 September 1983, the wife filed a complaint asking for alimony pendente lite, permanent alimony, custody of the children, child support payable by defendant, equitable distribution of the marital property and absolute divorce. The plaintiff voluntarily dismissed her claim of alimony, with prejudice. Child custody and the defendant's obligation to pay child support were not contested. The parties say they were granted a divorce. The record in this appeal contains no copy of the divorce decree. The case was tried solely on the issues of equitable distribution and the amount of child support.

On 5 October 1983, the trial judge entered an order of equitable distribution. The order concluded that the defendant's interest in the partnership was marital property of value $100,896 and should be divided equally between the parties. The order also approved the oral agreement at the time of separation as to the parties' personal property, and concluded that each party should retain the property he or she presently possesses by virtue of that agreement. The order also concluded that the piano was a gift by the parties to the children and that it is the property of the children.

The defendant appeals the judgment.

*Jack P. Gulley for plaintiff appellee.*

*Hunter, Wharton & Howell, by John V. Hunter III, for defendant appellant.*

ARNOLD, Judge.

I

The defendant first contends that the trial court failed to calculate correctly the present value of defendant's interest in his accounting partnership.

[1] A spouse's interest in a professional partnership is a marital asset subject to equitable distribution. *See Stern v. Stern*, 66 N.J. 340, 331 A. 2d 257 (1975); *In re Marriage of Fonstein*, 17 Cal. 3d 738, 131 Cal. Rptr. 873, 552 P. 2d 1169 (1976). Placing a precise or

Weaver v. Weaver

even approximately accurate value on such a partnership interest, especially when the partner whose interest is in question continues as a member of the firm, is not easy. There is no real market value for this asset. Yet, partnership interests can and have been successfully valued, with the aid of expert testimony and using various appraisal methods. *See Stern v. Stern*, 66 N.J. 340, 331 A. 2d 257 (1975); *Johnson v. Johnson*, 277 N.W. 2d 208, 213 (Minn. 1979) (joint venturer's interest valued under same principles as partnership interest); *In re Marriage of Fonstein*, 17 Cal. 3d 738, 131 Cal. Rptr. 873, 552 P. 2d 1169 (1976); Ytreberg, Evaluation of Interest in Law Firm or Medical Partnership for Purposes of Division of Property in Divorce Proceedings, 74 A.L.R. 3d 621, 624; *cf.* L. Schwechter & R. Quintero, Valuing the Professional Service Corporation, 3 Equitable Distribution Rep. 142 (1983).

Partnership agreements often furnish a useful method for calculating the partnership interest's value, *see Stern v. Stern, supra; In re Marriage of Fonstein, supra*, particularly when they do not penalize, or place a premium on the holdings, of a particular partner, *see In re Marriage of Morris*, 588 S.W. 2d 39, 43-44 (Mo. App. 1979) (redemption agreement terms for death of stockholder not appropriate in equitable distribution because they placed a premium value on stocks). When the terms of a partnership agreement are used, however, the value of the interest calculated is only a *presumptive* value, which can be attacked by either plaintiff or defendant as not reflective of the true value. *Stern*, 331 A. 2d at 261.

There is no single best approach to valuing a partnership interest. Our task on appeal, therefore, is to determine whether the approach used by the trial judge reasonably approximated the "net value" of the partnership interest.

[2] In the present case, the trial judge, in his Judgment of Equitable Distribution, made a finding of fact that the marital assets of the parties included "[d]efendant's interest in the Partnership which had a present value on December 31, 1982 of One Hundred Thousand, Eight Hundred and Ninety-Six Dollars ($100,896.00)." The trial court apparently based this finding of ultimate fact on the testimony of Mr. Jack Wilson, Chairman of the Management Committee of defendant's accounting partnership. Mr. Wilson testified as to how defendant's interest in the

capital account and share of the profits would be distributed to
him under the terms of the partnership agreement in the event of
defendant's withdrawal from the firm. The trial court summarized
the pertinent parts of this testimony in another finding of fact:

> [T]hat Mr. Wilson testified that computing the Defendant's
> capital account as of April 1, 1982, at the close of the
> preceding fiscal year was Forty-Three Thousand, One Hun-
> dred and Ten Dollars ($43,110.00); that Mr. Wilson further
> testified that as of December 31, 1982, it was at Thirty-Two
> Thousand Dollars ($32,000.00); that the capital account was
> generally lower in December than at the end of March, and
> that he would anticipate that it would increase back by
> March 31, 1983; Mr. Wilson testified that if on February 4,
> 1983, the Defendant had left the firm as of that date based
> upon the capital account of Thirty-Two Thousand Dollars
> ($32,000.00) on December 31, 1982, he would have received
> the capital account of Thirty-Two Thousand Dollars plus
> Eighty Thousand, Nine Hundred and Eighty-Six Dollars
> ($80,986.00) for a total of One Hundred and Twelve Thousand,
> Nine Hundred and Eighty-Six Dollars (112,986.00); that the
> capital account would be paid for a five (5) year period in
> quarterly installments with no interest and the balance of
> Eighty Thousand, Nine Hundred and Eighty-Six Dollars
> ($80,986.00) would be paid over a five (5) year period at no in-
> terest, the latter sum representing one-half (1/2) of Defend-
> ant's partnership interest in the firm for a period of five (5)
> years.

The trial court thus calculated the present value of defend-
ant's interest in the partnership as the Management Committee
would have done had defendant withdrawn in February, 1983 (the
trial court backdating to 31 December 1982). The trial court added
the value of the defendant's capital account, $32,000, to the re-
mainder of his partnership interest, which was valued at $80,986.
The total of these two amounts was $112,986.00. Under the terms
of the partnership agreement, this sum would not be paid on the
date of withdrawal, but would be paid out over five years, with
no interest, in quarterly installments. Thus, the real value of
defendant's entire interest in the partnership in early 1983 would
be somewhat less than the sum of the payments he would receive
over the five year period. The trial court correctly recognized

that he must find the present value of the partnership interest, by discounting future payments at an appropriate rate of interest. The trial court found that the $112,986 spread out over five years would be worth $100,896 in early 1983. Our calculations show that the trial court used a discount rate of 4½%.

[3]   While we believe the discount rate somewhat unrealistic (as will be discussed below), we find that the trial court's method of calculating the present value of defendant's partnership interest was basically sound. The trial court used the partnership agreement's payment plan for a withdrawing partner. The plan first separates out the partner's capital account, which is the partner's equity in the firm, i.e., it is his share of the retained earnings, or undrawn profits, including cash accounts, receivables and equipment. The plan then derives a percentage, based on the partner's prior contribution to fees, and applies it to the profits earned over a five year span dating from the withdrawal date. Half of that amount is paid out to the partner in installments over the five years. This latter amount reflects the net value of defendant's interest in a going concern, that is, his share of the goodwill of the firm, as well as his share of the net value of work in progress. We agree with courts in other jurisdictions that goodwill is an asset that must be valued in equitable distribution of an interest in a going concern. *See Stern v. Stern*, 331 A. 2d at 261; *In re Marriage of Nichols*, 43 Col. App. 383, 606 P. 2d 1314 (1979); *In re Marriage of Fleege*, 588 P. 2d 1136 (Wash. 1979).

Since the firm operates on a cash basis, the formula for distribution of profits and the capital account over the successive five year period is a reasonable method of paying out the net value of the withdrawing partner's interest. Discounting these projected payments to find a present value was proper since the valuation for equitable distribution must be a fixed amount made as of a particular statutory valuation date.

The defendant has presented no proof that the figures for defendant's capital account and share of projected profits are inaccurate, or that the partnership agreement's formula incorrectly represents his share of the firm's true monetary worth. In general, the method used by the trial court to value the partnership interest was fair and reasonable, involving no "clear abuse of

discretion," *see White v. White*, No. 559PA83, slip op. at 10 (N.C. January 30, 1985).

**[4]** While the method used was not unreasonable, the interest rate used to discount the payments to defendant of his interest in the partnership was relatively low. The trial judge did not explain why he used that particular rate. The plaintiff notes in her brief that this is the rate used under G.S. 8-47 to calculate the present worth of annuities payable annually to a person during his life. We do not believe that the purpose of that statute was to cover cases such as the present, where the trial judge sought to find the actual or true net value of the partnership interest to defendant in 1983. We take notice that the rate of 4½% was far below the going or market rate in 1983, and that the use of it produced a present value thousands of dollars in excess of the actual or market value of the money. We therefore remand for a recalculation of the partnership interest, using a rate reasonably in keeping with the fair market value of the money. Reasonable rates of comparison, for example, might include the rate used by the Internal Revenue Service in determining assessments and refunds, Treasury bill rates, or the prime rate charged by banks.

The defendant claims that the trial judge erred in not valuing the partnership interest as of the date of separation of the parties, 4 September 1981. Section 50-21(b) of the North Carolina General Statutes was added by legislation effective 1 August 1983. It provided that if divorce is granted on the ground of one-year separation that the marital property shall be valued as of the date of separation. Session Laws 1983, c. 671, s. 2, makes the act applicable to all civil actions brought under G.S. 50-20, including actions pending in district court on the effective date of the act. This case was filed on 7 September 1982, and was tried in May 1983. The judgment of equitable distribution was signed 30 September 1983 and entered 5 October 1983. This case was pending at the time the amendment to G.S. 50-21 was enacted. The trial judge thus should have valued the partnership interest pursuant to the present G.S. 50-21(b).

The defendant has not, however, placed in the record a copy of the divorce decree, and we do not know the grounds for divorce. On remand, the trial judge should make a finding as to the ground for divorce and value the partnership interest as of the date required under G.S. 50-21(b).

## II

[5]   The defendant contends that a number of contingencies affect payment under the partnership agreement and must be considered in valuing defendant's partnership interest. All the contingencies defendant invokes, such as whether he will take partnership clients with him if he were to withdraw, are purely speculative. The defendant has produced no evidence that they are likely to or will occur (*e.g.*, he has not said he will have to withdraw from the partnership and take clients with him in order to pay the distributive award) and therefore the trial judge properly ignored them. *See In re Marriage of Fonstein*, 131 Cal. Rptr. 873, 552 P. 2d 1169 (1976); *In re Marriage of Goldstein*, 120 Ariz. 23, 583 P. 2d 1343 (1978); *Crooker v. Crooker*, 432 A. 2d 1293 (Me. 1981).

The defendant argues similarly that the trial court failed to consider taxes that defendant might have to pay on the interest in his partnership if he were to withdraw, or to consider the lower taxes his wife will pay on the house the trial judge awarded her. Again, the defendant asks the court to engage in mere speculation. The trial court is not required to consider possible taxes when determining the *value* of property in the absence of proof that a taxable event has occurred during the marriage or *will* occur with the division of the marital property. *In re Marriage of Fonstein*, 131 Cal. Rptr. 873, 552 P. 2d 1169 (1976); *accord Stern v. Stern*, 66 N.J. 340, 331 A. 2d 257 (1975). We construe Section 50-20(c)(11) of the General Statutes as requiring the court to consider tax consequences that will result from the distribution of property that the court actually orders.

## III

[6]   The defendant contends further that the trial court erred by failing to consider all the factors for equitable distribution set out in G.S. 50-20(c). The defendant states in his brief that the "trial court failed to consider at all, or make findings on, factors (9), (10), and (11)."

In the case *Alexander v. Alexander*, 68 N.C. App. 548, 315 S.E. 2d 772 (1984), this Court addressed the problem of how the trial court must consider the factors in Section 50-20(c) and what findings it must make:

Weaver v. Weaver

If, in a particular case, the court concludes after its careful and clearly articulated consideration of all of the statutory factors and of any non-statutory factor raised by the evidence which is reasonably related to the rights to, interest in, and need for the marital property, that an equal division is not equitable, the trial court may properly order an unequal division, but should state in its order the basis and reasons for its division. In other words, the trial court should clearly set forth in its order findings of fact based on the evidence which support its conclusion that an equal division is not equitable.

*Alexander*, 68 N.C. App. at 552, 315 S.E. 2d at 775-76.

The North Carolina Supreme Court recently held that the trial court's findings in support of an equitable but unequal division will not be disturbed on appeal unless there was a clear abuse of discretion. *White v. White*, slip op. at 10.

Further, in *White* the court held that an equal division of marital property is favored by the public policy behind the Equitable Distribution Act. We believe this holding is consistent with that in our recent opinion *Loeb v. Loeb*, No. 8315DC1177, slip op. (January 2, 1985), that the trial court need only make findings of fact on the statutory and nonstatutory factors when it has concluded that an equal division is inequitable. *Id.* at 16-17.

In the present case, the trial judge ordered an equal division of the net value of all marital property except for certain personal property, discussed below. We find nothing in the record to indicate he did not consider all the statutory factors in ordering this equal division. Under *Loeb*, the trial court did not have to make specific findings in its judgment as to the factors in Section 50-20(c), because it did not order an unequal but equitable division. Indeed, the trial court left intact the partnership interest and the house, ordering that the partnership remain with the husband and that the house be conveyed to the wife, and determined that the defendant should pay a distributive award to the plaintiff so that each party would receive an equal value. We cannot say that in this case an equal division of the property was a clear abuse of discretion. The strong public policy favoring an equal division has not been overcome by either of the parties, and the trial judge's failure to make specific findings on all the Section

50-20(c) factors was not error, at least with regard to all marital property except for the personal property.

## IV

[7]    The defendant objects to the trial judge's treatment of the parties' household furnishings. When the parties separated, the husband left the marital home, and took with him a part of the household furnishings. The wife testified that she and her husband agreed orally to the division at that time, and that the husband was satisfied with the division.

The trial judge rejected defendant's valuation of the furnishings, approved the division on separation, and adopted it as an equitable one in his judgment. The court concluded "that the division between the parties was fair and equitable and satisfactory to the parties at the time of the division and the division is approved by the Court. . . ." In making this unequal division of property, the trial court's primary finding was that the parties had orally agreed to the division on separation and that this was satisfactory to them then. The trial court thus left the division of furnishings as it was on separation, and did not add the value of the furnishings to the total value of the marital property.

The trial court's reliance on the parties' oral agreement and his failure to make specific findings under Section 50-20(c), explaining the equitable distribution of the furnishings was error. Under the statute, the trial court may rely on a *written* agreement providing for distribution of marital property. G.S. 50-20(d). On remand, the trial court must value the furnishings and make specific findings explaining the division he orders, if it is not an equal one.

## V

[8]    The defendant objects to the trial court's finding that a piano, purchased by the wife for $3,800, with marital funds, was a gift to the children of the marriage and was not marital property of the parties. The statute says that "marital property" "means all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, *and presently owned*, except property determined to be separate property in accordance with subdivision (2) of this section." G.S. 50-20(b)(1) (emphasis added).

Persons in the parties' family who live in the marital home can have property there which does not belong to the parties. Minor children can own property. Evidence was presented at trial that the parties made a gift of the piano to the children and that it was presently owned by them. The trial court's finding that a gift had been made and that the piano was not part of the marital property was not in error.

Defendant's contention that the trial court failed to find facts as to the partnership interest of the husband lacks merit. The trial court found as an ultimate fact that the present value of the partnership interest was $100,896, and that is all that it is required to do. *See Watts v. Supt. of Building Inspection*, 1 N.C. App. 292, 295, 161 S.E. 2d 210, 213 (1968).

The trial court's order is affirmed in part and reversed and remanded in part, with instructions that the trial court adjust its order in accordance with this opinion.

Affirmed in part, reversed and remanded in part.

Judges WELLS and BECTON concur.