Thomas Hayden CLARK, Appellant,

v.

Lorene McIntire CLARK, Appellee.

No. 88–CA–1961–MR.

Court of Appeals of Kentucky.

Jan. 5, 1990.

Karen Scent, William E. Scent, Paducah,
for appellant.

W. Pelham McMurry, Paducah, for appellee.

Before GUDGEL, HOWARD and WEST, JJ.

HOWARD, Judge.

Dr. Thomas H. Clark appeals from a decision of the McCracken Circuit Court finalizing the divorce of appellant and Lorene M. Clark, the appellee. Appellant appeals specific findings concerning division of marital property and awarding maintenance to the appellee.

Appellant and appellee were married on June 4, 1966. Their marriage was dissolved on March 27, 1986. Appellant had completed medical school at the time of the couple's marriage. From 1966 to 1975, he served as a resident and intern with the United States Army. He was stationed in different locations in this country and abroad. His wife travelled with him. She worked either as a teacher or a secretary until 1971 in order to help supplement the family's income.

In May, 1975, the appellant was discharged from the Army and the couple moved to Paducah, Kentucky, the appellee's hometown. Appellant joined the established OB–GYN practice of Doctors Bohle and Franks. He was made a full partner and remained with this office until 1983. In 1983, Dr. Clark became associated with another OB–GYN practice which is now known as Chaney, Clark and Hayden, PSC. He presently owns a one-third interest in this medical corporation and a one-third interest in the medical partnership building.

Mrs. Clark has been primarily a homemaker for the last sixteen years. She has achieved a degree and additional course hours and is certified to teach. Appellant at the time of dissolution was and still is a physician board certified in obstetrics and gynecology, earning approximately $6,850 per month after taxes. His yearly income from the medical practice exceeds $100,000. The couple has one daughter, Catherine, who was born in 1980. Appellee has devoted much of her time to rearing Catherine.

Appellant has agreed that appellee should have custody. The court agreed and granted appellant liberal visitation rights.

The couple stopped living together in 1984. Appellant remarried in 1987. The decree of dissolution was entered on March 27, 1986, and the final judgment concerning property, maintenance and child support was entered on August 15, 1987.

The trial court specifically found that appellant should pay maintenance of $2,500 per month to appellee for twenty years and that he should pay child support of $800 a month until Catherine reaches 18 years. The court found that the marital property should be divided equally between the parties, and that appellant should pay $19,-118.29 toward appellee's attorneys' fees and expenses. The trial court also specifically found that appellant's stock in the medical professional corporation valued $183,040, which included value for goodwill, and it ruled that an automobile given by appellant to the appellee was nonmarital property. Finally, the court entered a qualified domestic relations order awarding one-half of appellant's pension and profit-sharing balances as of August 15, 1988, to appellee. Appellant has appealed several of these findings.

■ Appellant first objects to the methods the trial court used to value the medical professional corporation. Appellant specifically asks this Court to solely use the corporate bylaws to value the corporation's assets as he claims some other states have done. He specifically claims that the trial court erred by accepting the values obtained through the fair market value approach offered by the appellee's expert.

First, it has been the general principle in both Kentucky and other jurisdictions that the trial court's judgment and valuations in an action for divorce will not be disturbed on appeal unless it was clearly contrary to the weight of evidence. *Heller v. Heller,* Ky.App., 672 S.W.2d 945 (1984); *Carpenter v. Carpenter,* 657 P.2d 646 (Okl.1983); *Poore v. Poore,* 75 N.C.App. 414, 331 S.E.2d 266 (1985). Thus, it is the duty of this Court to examine the methods utilized

by the trial court to see if it clearly erred in valuing the corporation's assets.

■ Kentucky courts have not specifically adopted an approach in valuing such assets. Other states have applied a "book value" approach or a fair market value approach. In no case cited by appellant however would a court solely use a book value approach when this method would not correctly value a corporation's assets. "When the terms of a partnership agreement are used, however, the value of the interest calculated is only a presumptive value, which can be attacked by either plaintiff or defendant as not reflective of the true value." *Weaver v. Weaver*, 72 N.C.App. 409, 324 S.E.2d 915 (1985). *See also Stern v. Stern*, 66 N.J. 340, 331 A.2d 257 (1975). There is no single best method. *Weaver, supra.* The task of the appellate court is to determine whether the trial court's approach reasonably approximated the net value of the partnership interest. *Weaver, supra.*

In the case before this Court, the trial court heard testimony from two experts— one who strictly followed the corporation's agreement and applied book value, and the other who applied the fair market value approach. The court in this case adopted the latter approach. This approach more closely valued the corporation's assets. Specifically, Dr. Mackin, the appellee's expert, considered the collectibility of the corporation's past accounts receivable and, based on those values and records, calculated the value of the corporation's current accounts receivable. He also considered the current value of the corporation's inventory, equipment, and insurance short-term value. This method was more reflective of the true value of the corporation's assets. The trial court certainly did not err in adopting this valuation approach.

■ As part of his first argument, appellant specifically contends that the trial court erred in including the value of the corporation's goodwill for dividing the marital assets and awarding maintenance. We disagree.

■ This Court, in *Heller, supra*, specifically ruled that the goodwill contained in a business or professional organization is a factor to be considered in arriving at the value of the practice. This Court explained goodwill in *Heller*. Specifically, professional practices that can be sold for more than the value of their fixtures and accounts receivable have goodwill. *Heller, supra*, at 948. Goodwill in essence is the expectation that patrons or patients will return because of the reputation of the business or firm. This goodwill has specific pecuniary value. Goodwill has also been defined as the excess of return in a given business over the average or norm that could be expected for that business. *Hanson v. Hanson*, 738 S.W.2d 429 (Mo.1987). The age, health and professional reputation of the practitioner, the nature of the practice, the length of time the practice has been in existence, past profits, comparative professional success, and the value of its other assets, are all factors of goodwill. *Poore, supra*. It is the growing trend of courts in this country to consider goodwill in valuing a corporation. Graham and Keller, *Kentucky Domestic Relations Law* (Cleveland, Banks–Baldwin, 1988), page 292; *Weaver, supra; Levy v. Levy*, 164 N.J.Super. 542, 397 A.2d 374 (1978); *Rupley v. Rupley*, Ky.App., 776 S.W.2d 849 (1989). Thus, the trial court was correct in considering goodwill.

The trial court in the case at bar adopted a capitalization of excess earnings method for evaluating the goodwill of this professional corporation. Under this method, the goodwill value is based in part on the amount that the earnings of the professional spouse exceed those which would have been earned by a professional with similar education, experience, and skill as an employee in the same general area. *Poore, supra*, 331 S.E.2d at 271. Specifically, four steps are involved in the capitalization of excess earnings method. First, the court must ascertain what a professional of comparable experience, expertise, education and age would be earning as an employee in the same general locale, determine and average the professional's net income before federal and states income

taxes for a period of approximately five years, compare the actual average with the employee norm, and multiply the excess by a capitalization factor. *Taylor v. Taylor,* 222 Neb. 721, 386 N.W.2d 851 (1986). Dr. Mackin, the appellee's expert who calculated the value of the goodwill, used these same steps outlined above. He specifically concentrated on a three-year period of Dr. Clark's earnings. He used a survey of doctors in appellant's OB–GYN specialty who had been surveyed by the American Medical Association. Dr. Mackin used a weighted multiplication factor to gain results that closely correlated with the methods used in the survey. Contrary to appellant's assertion, the method involves calculating the professional's past earnings, not future earnings. There is no indication from the evidence in the case at bar that the trial court incorrectly applied the capitalization of excess earnings method. The findings correctly show the true value of the corporation's goodwill.

■ The capitalization of excess earnings method is a widely accepted method and the most often used. *Taylor, supra,* 386 N.W.2d at 857; *Poore, supra,* 331 S.E.2d at 271; *Levy, supra,* 397 A.2d at 380. There are a number of acceptable methods which courts may adopt. There is no definitive rule or best method for valuing goodwill. *Poore, supra; Hurley v. Hurley,* 94 N.M. 641, 615 P.2d 256, 259 (1980). The determination of goodwill is a question of fact rather than law, and each case must be determined on its own facts and circumstances. *Poore, supra, Hurley, supra.* Thus, the trial court was correct in adopting and applying the capitalization of excess earnings method. As stated earlier, the trial court's valuation of goodwill should not be disturbed if it appears reasonable.

■ Appellant also contends that the corporation's bylaws state that the purchase price of the corporation's stock shall not include goodwill if any. As a result, he argues that the trial court was incorrect in considering this value for dissolution purposes. We disagree. This result would not be fair. While some courts would not allow any valuation of goodwill in cases like this, other courts ignore such provisions and value goodwill anyway. Some courts see using the bylaws or buy-sell agreement as only one method of valuing goodwill. *Poore, supra.* "Accordingly, we do not think the dispositive factor is whether Dr. [Hurley] can sell his goodwill. His goodwill has value despite its immarketability, and so long as he maintains his ... practice ... he will continue to receive a return on the goodwill associated with his name." *Hurley, supra,* 615 P.2d at 259, quoting *Marriage of Lukens,* 16 Wash. App. 481, 558 P.2d 279, 282 (1976). The difficulty of valuing goodwill is not sufficient reason to ignore its existence. *Hurley, supra.* The trial court here correctly considered and valued goodwill.

Appellant secondly contends that the trial court abused its discretion in the maintenance it awarded appellee because it failed to consider the value of the property awarded to appellee, her ability to meet her own needs, and the appellant's ability to pay this maintenance. The trial court in the case at bar awarded appellee the following: "Dr. Clark shall pay to Lorene Clark as maintenance on the 5th day of each month the sum of $2,500.00 for a period of 20 years or until her death or remarriage, whichever occurs first."

■ First, as with valuation matters, maintenance determinations are within the sound discretion of the trial court. *Platt v. Platt,* Ky.App., 728 S.W.2d 542 (1987). In such matters, unless absolute abuse is shown, the appellate court must maintain confidence in the trial court and not disturb the findings of the trial judge. *Platt, supra; Moss v. Moss,* Ky.App., 639 S.W.2d 370 (1982).

■ Appellant, as part of his argument, first contends that the trial court's decree forces the appellant's estate to continue paying the appellee maintenance even after his death. This contention is incorrect. The decree in this case does not specifically state that the payments will continue after the payor's death. KRS 403.250(2) states that unless otherwise agreed or expressly provided in the decree, the obligation to

pay future maintenance is terminated upon the death of either party. This Court in *Clark v. Clark*, Ky.App., 601 S.W.2d 614 (1980), specifically considered this statute. The decree it was forced to evaluate was virtually identical to the one currently before this Court. The Court decided to overrule *Shepherd v. Shepherd*, Ky., 521 S.W.2d 74 (1975), and other cases which had earlier held that such language in a decree meant that the maintenance would continue to be paid after the payor's death. The *Clark* Court held that unless the divorce decree specifically stated that such payments would continue, the payments would end at the payor's death. No inferences would be drawn. The Court specifically felt this was the intent of the drafters of KRS 403.250(2). In this case, the payments would not continue. As a result, appellant's argument is misplaced.

 Appellant also contends that the trial court failed to consider the tax implications on the parties to this case. He argues that the maintenance award is non-deductible to appellant for federal income tax purposes, and appellee will be able to receive the payments tax free. It is true that the post-divorce tax positions of the parties must be considered. *Broida v. Broida*, Ky., 388 S.W.2d 617 (1964) (modified on rehearing 3/26/65 at p. 621). In this case, appellant's assertion that the maintenance payments will not be deductible is simply incorrect. As pointed out previously, the payments will not continue beyond appellant's death so this will not be a factor to consider. Under the 1984 Tax Code, alimony payments are deductible to the payor spouse and are income to the recipient if they are periodic payments, in discharge of a legal obligation, and imposed by a written divorce decree or separation agreement. In 1984, six additional criteria were established: 1) The payments must be pursuant to a divorce or separation instrument, 2) If the payments are pursuant to a decree of divorce or separate maintenance, the parties may not be members of the same household, 3) payments must be in cash, 4) payment must not be designated as a payment not deductible by the payor, 5) there must be no obligation to continue the payments after the recipient's death, and 6) the payments must not be child support. Graham and Keller, *Kentucky Domestic Relations Law, supra,* at 512–513. All of these conditions have been met, and the payments will be deductible to appellant.

 Appellant argues that the trial court abused its discretion by punishing him. Specifically, he believes the length and the amount of the payments indicate this intent. The trial court correctly considered the parties' positions in this case and the award of maintenance was fair considering the circumstances. KRS 403.-200(1) addresses maintenance. It follows the provisions of the Uniform Act and encourages rehabilitative maintenance to enable a spouse long absent from the workplace to acquire self-supporting skills. *Graham and Keller, supra,* at 343. Kentucky courts however have ruled differently in situations where the marriage was long term, the dependent spouse is near retirement age, the discrepancy in incomes is great, or the prospects for self-sufficiency appears dismal. *Graham and Keller, supra,* at 344.

 The court here correctly considered several of these factors. One of the specific factors the court should consider is whether the spouse is unable to support herself through appropriate employment according to the standard of living established during the marriage. *Casper v. Casper*, Ky., 510 S.W.2d 253 (1974); *Newman v. Newman*, Ky., 597 S.W.2d 137 (1980). It is especially acceptable for the trial court to consider the impact of the divorce on the nonprofessional's standard of living and award an appropriate amount that the professional spouse can afford. *McGowan v. McGowan*, Ky.App., 663 S.W.2d 219 (1983). Finally, the trial court should not automatically grant a monetary award simply because one spouse contributed to the other spouse obtaining a professional degree, but these efforts should be considered and compensated especially if the spouses' incomes or salaries are uneven. *McGowan, supra.*

In this case, the trial court correctly considered the appropriate factors in awarding maintenance. Appellee was not currently working at the time of the dissolution because she was taking care of the couple's young daughter. The marriage had lasted close to twenty years. During the marriage, both parties had come to enjoy a very comfortable standard of living. Appellee was trained as a teacher. The evidence indicates that there were no teaching positions available in the Paducah area in her field. Even if there were such teaching positions, the income would not anywhere near meet her needs or allow her to continue to enjoy the same standard of living. Considering these and other factors, the trial court's award was justified by the evidence. Such decrees are not modifiable as set out in KRS 403.250(1) and interpreted by *Dame v. Dame*, Ky. 628 S.W.2d 625 (1982).

Appellant repeatedly asserts that the trial court considered fault in making this determination. This Court in *Platt v. Platt*, Ky. App., 728 S.W.2d 542 (1987), ruled that fault should not be considered in awarding maintenance in situations like the one currently before this Court. There is no indication that the trial court specifically used fault as a factor in awarding maintenance. The trial court did consider the present situations and economic standing of both parties, however the court specifically noted that it was not considering fault.

■ Appellant further contends that the trial court gave appellee a double award by giving her both a portion of appellant's future earnings and a portion of the professional corporation's goodwill value. This argument is incorrect. As stated earlier, the capitalization of excess earnings method used to value goodwill examines appellant's past earnings, not his future earnings. Thus, there was no double recovery here, and no error by the trial court.

■ Finally, regarding maintenance, appellant argues that the trial court used the wrong date to value appellant's pension and profit sharing plans. We agree with appellant. The trial court valued the plans as they existed on the date of the qualified domestic relations order of August 15, 1988, instead of on the date of the dissolution decree of March 27, 1986. KRS 403.-190 and *Stallings v. Stallings*, Ky. 606 S.W.2d 163 (1980), both clearly indicate that the correct date for such valuation is the date of the dissolution decree. Thus, the pensions and profit sharing plans here should have been valued as of March 27, 1986. We reverse this part and order that a judgment be entered in conformity with this opinion.

■ Appellant in this case finally contends that the trial court abused its discretion in awarding appellee a 1980 Cadillac as nonmarital property. Appellant gave appellee this automobile as a Christmas present in 1980. Although both parties used the vehicle somewhat, the appellee used the car most of the time. The appellant indicated he gave the Cadillac to appellee as a present while she was pregnant with their daughter.

■ KRS 403.190 specifically states that a gift given to one spouse during the marriage is not considered marital property. This Court in *Ghali v. Ghali*, Ky.App., 596 S.W.2d 31 (1980), held that the trial court's determination concerning the gift or nongift status of an item, must be upheld unless there is clear error. The *Ghali* Court specifically considered the donative intent of the giving party, the personal nature of the item, and the surrounding circumstances to find in that case that a gift was intended. In *O'Neill v. O'Neill*, Ky.App., 600 S.W.2d 493 (1980), this Court described four factors that must be considered to see if something is a gift. These are 1) the source of the money with which the item was purchased, 2) the intent of the donor at that time as to the intended use of the property, 3) the status of the marriage relationship at the time of the transfer, and 4) whether there was any valid agreement that the transferred property was to be excluded from the marital property.

*O'Neill, supra, Graham and Keller, supra,* and other authorities all indicate that

donative intent remains the primary factor. From examining the nature of the gift in the case at bar, the subsequent use of the vehicle and all the surrounding circumstances, the trial court made the correct decision in finding that the automobile was nonmarital property.

The decision of the McCracken Circuit Court is affirmed with respect to all of the points except the date of the valuation of the profit sharing plans. We reverse regarding that issue with directions to enter a judgment in conformity with this opinion.

All concur.