RENDERED:  NOVEMBER 10, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0753-MR

AMY LYNN GOODWIN                                                        APPELLANT

v.
APPEAL FROM TRIGG CIRCUIT COURT
HONORABLE CLARENCE A. WOODALL, III, JUDGE
ACTION NO. 20-CI-00073

WILLIAM ELLIS GOODWIN                                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, McNEILL, AND L. THOMPSON, JUDGES.

ACREE, JUDGE:  Appellant Amy Goodwine (Amy) appeals the Trigg Circuit

Court's May 10, 2021 findings of fact, conclusions of law, and order requiring

William Goodwin (Bill) to pay Amy $1,500.00 per month in maintenance for five

years following the parties' divorce.  Amy contests (a) the amount and duration of

the maintenance award, (b) Bill not being required to continue listing Amy as a

beneficiary to life insurance, and (c) Bill not being required to pay Amy's attorney's fees pursuant to the dissolution. Finding no error, we affirm.

## BACKGROUND

Amy and Bill were married on July 4, 1997. They have one child together (Daughter), who was born September 21, 2006. Amy and Bill separated in March of 2020. Bill filed a petition for dissolution of marriage on April 21, 2020. The trial court conducted a final evidentiary hearing on February 18, 2021 and entered an interlocutory decree of dissolution on March 15, 2021. Their marriage lasted 23 years and eight months.

Bill was 52 years old at the time of the final hearing. He enlisted in the Army a few months before he married Amy, beginning his military service on February 14, 1997. He served as a helicopter pilot for the Army for the vast majority of the marriage, until his retirement on March 31, 2019. In April 2019, Bill obtained employment with Lockheed Martin as a test pilot, where he began to earn substantially more than he did during his time in the Army. Bill earns a gross salary of $116,622.00 at Lockheed Martin. Additionally, Bill receives a gross monthly payment of $2,132.96 in VA benefits, and gross monthly military retirement pay in the amount of $4,151.00.

Amy was 54 years old at the time of the final hearing. Amy works at Heritage Christian Academy (HCA), a private school in Hopkinsville, Kentucky,

where she is a middle school physical education teacher. She also earns income by coaching gymnastics in Clarksville, Tennessee, and judging gymnastics meets. Between teaching, coaching gymnastics, and judging meets, Amy earns an average of $29,767.00 in gross annual pay.

Bill was deployed approximately seventy-five percent of the time while in the military, and Amy was primarily responsible for Daughter's care and for maintaining their residence. Daughter attends HCA. Because Amy works at HCA, Daughter's tuition is reduced by fifty percent. Amy and Daughter continue to live in the marital residence.

At the outset of the February 18, 2021 evidentiary hearing, the parties agreed to joint custody of Daughter, with Amy as the primary residential parent. Bill agreed to pay Amy $1,000.00 monthly in child support until Daughter's emancipation in May 2025. Each agreed to pay half of Daughter's HCA tuition and costs arising from Daughter's extracurricular activities.

After allocating non-marital property to each party, the trial court determined that Amy's and Bill's total marital estate was worth $1,122,197.77. After the trial court divided the marital property, Bill's total marital award was $522,848.77, and Amy's total marital award was $599,349.00. The trial court awarded Amy the residence, requiring that she assume the mortgage. Among other property, Amy's award included a bank account worth $35,993.16. The trial court

ordered Amy to pay Bill $38,250.00 within ninety days of its final order to balance the marital awards. Amy took out a loan against the equity in the residence to obtain cash for this payment.

Because Amy and Bill were married for 98.25 percent of Bill's military service, the trial court awarded Amy 49.125 percent of Bill's monthly retirement pay. Amy receives a gross monthly payment of $2,039.18 from Bill's military retirement.

The trial court determined Bill receives a gross monthly income of $13,963.30 from all sources, and a net income of $11,057.52. After expenses of $4,516.00, Bill has a monthly discretionary income of approximately $8,760.00. Amy receives a gross monthly income of $5,133.29 from all sources. She receives a net income of $4,894.03, including pay from employment, child support payments from Bill, and her portion of Bill's monthly military retirement.

Across the marriage dissolution process, Amy submitted three charts that itemized her expenses. Her first chart claimed total monthly expenses of $7,210.00, the second chart claimed $7,486.00 in expenses, and the third chart claimed $7,801.00. However, the trial court found Amy's reasonable monthly expenses to total $5,193.00, leaving her with an average net monthly disposable income of $62.00. While the trial court accepted some of Amy's claimed expense categories, it reduced many others.

Based on the length of the marriage, the trial court found it would not be reasonable for Amy to live minimally and that she lacked sufficient property – marital or otherwise – to provide for her reasonable needs. Accordingly, it awarded her $1,500.00 in maintenance payments for a period of sixty months. Maintenance will terminate if Amy dies, or if Amy remarries or cohabitates with another adult to whom she is not related by blood or marriage. Conversely, the maintenance award does not terminate if Bill dies, and would continue to be paid out of his estate for the remainder of the sixty-month term in the event of his death.

The trial court also determined that neither party is required to keep the other as a beneficiary under any life insurance policy. Bill owned two life insurance policies at the time of the hearing. The first provides a death benefit of $400,000.00 and the second policy provides $200,000.00. Bill purchased the second policy as an alternative to the Army's Survivors Benefit Plan (SBP), which Bill opted out of upon his retirement from the military.

The trial court also denied Amy's request for attorney's fees. It determined that Amy and Bill should be required to pay their own legal fees based on their respective financial resources. This appeal followed.

**STANDARD OF REVIEW**

"In all actions tried upon the facts without a jury[,]" including actions for dissolution of marriage, "[f]indings of fact[] shall not be set aside unless clearly

-5-

erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR[1] 52.01. A factual finding is clearly erroneous if it is "manifestly against the weight of evidence." *Wells v. Wells*, 412 S.W.2d 568, 571 (Ky. App. 1967) (citation omitted). Conversely, a factual finding is not clearly erroneous if substantial evidence supports it. *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky. App. 2003) (citing *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409 (Ky. 1998)). "Substantial evidence is evidence, when taken alone or in light of all the evidence, which has sufficient probative value to induce conviction in the mind of a reasonable person." *Id.* (citing *Golightly*, 976 S.W.2d at 414).

While factual findings are reviewed for clear error, trial courts are afforded a wide range of discretion when awarding maintenance in divorce actions. *Age v. Age*, 340 S.W.3d 88, 94-95 (Ky. App. 2011). Thus, a trial court's maintenance award is reviewed for abuse of discretion. *Id.* "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

---

[1] Kentucky Rules of Civil Procedure.

# ANALYSIS

Amy argues the trial court erred in three ways. First, the trial court abused its discretion in awarding her a monthly maintenance payment of only $1,500.00 for a period of sixty months. Second, the trial court abused its discretion when it declined to direct Bill to designate Amy as the beneficiary of $250,000.00 in life insurance benefits. Third, the trial court abused its discretion by declining to award Amy reasonable attorney's fees. Because none of these decisions by the trial court was arbitrary, unreasonable, unfair, or unsupported by sound legal principles, we disagree and affirm the trial court's determinations.

## *Maintenance Award*

KRS[2] 403.200(1) empowers trial courts to award maintenance to either spouse only if two elements are met. A court may award maintenance if the spouse seeking it both "[l]acks sufficient property, including marital property apportioned to [her], to provide for [her] reasonable needs" and will be unable "to support h[er]self through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home." KRS 403.200(1)(a)-(b). The trial court agreed with Amy that she was entitled to maintenance because she is unable

---

[2] Kentucky Revised Statutes.

to provide for her reasonable needs through her property or through appropriate employment.

However, Amy argues the trial court's maintenance award was insufficient in both amount and duration. KRS 403.200(2) provides trial courts' maintenance orders "shall be in such amounts and for such periods of time as the court deems just," and provides a non-exhaustive list of six factors for trial courts to consider:

> (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>
> (c) The standard of living established during the marriage;
>
> (d) The duration of the marriage;
>
> (e) The age, and the physical and emotional condition of the spouse seeking maintenance; and
>
> (f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

KRS 403.200(2).

Amy asserts her circumstances are like those in *Powell v. Powell*, 107 S.W.3d 222 (Ky. 2003). In *Powell*, the dependent spouse was awarded $3,000.00 per month in maintenance for a duration of three years following the termination of an eighteen-year marriage. 107 S.W.3d at 223. The Supreme Court applied the six KRS 403.200(2) factors to determine the trial court had abused its discretion in determining the amount and duration of maintenance. *Id*. at 223-25. Though the purpose of KRS 403.200 is to "enable the unemployable spouse to acquire the skills necessary to support himself or herself in the current workforce so that he or she does not rely upon the maintenance of the working spouse indefinitely[,]" maintenance may be awarded for a longer duration or a greater amount "'in situations where the marriage was long term, the dependent spouse is near retirement age, the discrepancy in incomes is great, or the prospects for self-sufficiency appears dismal[.]'" *Id*. at 224 (quoting *Clark v. Clark*, 782 S.W.2d 56, 61 (Ky. App. 1990)).

Though the wife in *Powell* was the primary earner while the husband completed his residency and internships during medical school, the husband's neurosurgery practice afforded them "a fairly luxurious lifestyle" during the later years of the marriage. *Id*. at 225. While the wife, who held a master's degree in nursing, could increase her earning potential to $45,000.00 per year after completion of 150 hours of continuing education and could bolster that income by

investing the $360,000.00 property settlement award "at a reasonable rate of return[,]" the Supreme Court noted that the wife would receive no equity from the sale of the marital home and therefore would be required to spend a portion of the property award on obtaining a new residence. *Id*. Even if the wife increased her earning potential to $45,000.00 per year, this was "still less than [husband] earns in one month." *Id*. The wife had been out of the workforce since 1987, primarily to raise their child. *Id*. at 224. The wife was around fifty years old at the time of the divorce, and "suffered from back injuries that could limit her ability to work as a nurse in a traditional setting." *Id*.

Amy's circumstances are distinguishable from those of the spouse in *Powell*. While Amy and the spouse in *Powell* are about the same age, Amy has not been absent from the workforce and currently holds full time employment; Amy's prospects for self-sufficiency do not appear dismal as did the prospects for the spouse in *Powell*. The trial court awarded Amy all marital equity in the residence, which she has plenty of time to liquidate before the expiration of the maintenance period, should she so choose. Though Bill does earn considerably more than Amy, the disparity is not nearly as stark as the disparity between the parties' incomes in *Powell*. Amy suffers from no injury which would prevent her from working. And, as Amy stated, though she and Bill were able to do what they enjoyed, they did not

live extravagantly. In sum, Amy has ample resources in her marital award to enable her to soon support herself without reliance on maintenance from Bill.

Amy takes issue with the trial court's assessment of her expenses; Amy argues the trial court arbitrarily reduced several categories of claimed monthly expenses and the trial court awarded her insufficient maintenance as a result. Upon review of each of Amy's claimed category of expenses, we determine the trial court did not abuse its discretion in making these adjustments. For instance, Amy argues the trial court arbitrarily reduced her claimed monthly mortgage expense from $1,650.00 per month to $1,000.00. However, Bill submitted proof to the trial court that the mortgage on the residence could be refinanced from fifteen years to thirty years and that monthly payments – including taxes and insurance – could thereby be reduced to approximately $1,000.00 per month. Amy also has the option of selling the home.

Nor did the trial court abuse its discretion in making other reductions to Amy's expenses. As Bill notes in his brief, Amy did not provide receipts or other proof to the trial court to justify several categories of expenses. For example, expenses for which Amy failed to provide evidentiary support include clothing, dining out, gifts, and groceries. The trial court's determinations regarding these expense estimates are not, on their face, arbitrary or capricious and Amy has directed this Court to no evidence that contradicts that conclusion.

While the trial court did not accept the amounts Amy claimed for several categories in her later expense charts, it did grant her the amounts claimed on her initial chart. For instance, her first two charts listed a monthly phone expense of $205.00, which was increased to $305.00 on her third chart; the trial court determined this expense to be $205.00 per month because she did not provide support for the increase between the second and third chart. The trial court found Amy had $150.00 per month in vehicle maintenance expenses, though her first, second, and third charts list $100.00, $200.00, and $300.00, respectively; though Amy had recently had vehicle trouble, she provided no proof that these expenses would be ongoing. The trial court did not abuse its discretion by reducing Amy's expenses in these categories and others where the trial court granted her amounts claimed on her initial charts but not the increased amounts claimed on subsequent charts, especially in light of Amy's failure to provide proof supporting increases.

The trial court listed $250.00 for Amy's charitable expenses, which is a reduction from $576.00. While Amy and Bill were married, the two gave $500.00 to their church each month, as well as $76.00 per month to Compassion International, an international charity that partners with their church. However, the trial court determined that this was an expenditure that the parties made as a couple or family and that Amy could continue to make proportional monthly donations using her discretionary income. This calculation does not constitute an abuse of

discretion. Across each expense category, the trial court properly considered the factors provided by KRS 403.200(2) and did not abuse its discretion in making the reductions which Amy contests.

*Life Insurance*

Amy argues the trial court abused its discretion by not requiring Bill to keep her as a beneficiary to one or both of his life insurance policies. We disagree. The trial court determined that the maintenance obligation would not terminate if Bill dies, and therefore Bill's estate would be required to pay maintenance to Amy. And, though Amy would no longer receive her portion of Bill's military retirement benefits if Bill were to die, there is nothing preventing Amy from obtaining a life insurance policy herself to avoid the risk of losing that source of income. Accordingly, the trial court did not abuse its discretion in this regard.

*Attorney's Fees*

Finally, we conclude the trial court did not abuse its discretion by not requiring Bill to pay Amy's attorney's fees. KRS 403.220 provides that a trial court may order a party to a divorce proceeding to pay a reasonable amount for attorney's fees "after considering the financial resources of both parties[.]" "While financial disparity is no longer a threshold requirement which must be met in order for a trial court to award attorney's fees, we note that the financial disparity is still

-13-

a viable factor for trial courts to consider in following the statute and looking at the parties' total financial picture." *Smith v. McGill*, 556 S.W.3d 552, 556 (Ky. 2018).

In its order, the trial court declined to award Amy attorney's fees based on the "substantial resources" available to her. These resources include a bank account worth $35,993.16 and two vehicles with no associated debts, in addition to $1,562.00 in total monthly discretionary income following her maintenance award. Because Amy has an approximate balance of $8,825.00 remaining for her legal bills, it was not arbitrary or otherwise an abuse of discretion to require the parties to pay their own attorney's fees.

## <u>CONCLUSION</u>

For the foregoing reasons, we affirm the Trigg Circuit Court's May 10, 2021 findings of fact, conclusions of law, and order.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Julia T. Crenshaw
Hopkinsville, Kentucky

BRIEF FOR APPELLEE:

James E. Bruce, Jr.
Hopkinsville, Kentucky