RENDERED: MAY 8, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1465-MR

CARMINE SALERNO                                                          APPELLANT

v.

APPEAL FROM GARRARD CIRCUIT COURT
HONORABLE JEFFREY C. MOSS, JUDGE
ACTION NO. 23-CI-00032

ALLISON SALERNO                                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND McNEILL, JUDGES.

ACREE, JUDGE: Appellant Carmine Salerno appeals the Garrard Family Court's

order dividing property and awarding Appellee Allison Salerno permanent spousal

maintenance. Finding no error, we affirm.

## BACKGROUND

The parties were married to one another twice, the second time on

November 9, 2011. Carmine filed a Petition for Dissolution of Marriage on

January 10, 2023. Prior to filing, the parties were separated and living in separate

residences: Allison and the parties' 16-year-old child, A.S., in Kentucky and Carmine in New York. Even prior to separation, this was the parties' living arrangement for most of their time together; Carmine spent only brief periods of time at the marital residence in Kentucky.

The family court undertook factfinding and awarded marital and nonmarital property, maintenance, and custody.

Carmine appeals two specific rulings—the award to Allison of the marital residence in Kentucky including pets, livestock, a tractor, and other farm equipment, and the debts associated with the property; and the award to Allison of $7,500.00 per month in permanent maintenance. Carmine argues each determination was an abuse of the family court's discretion. We address each argument in turn.

## ANALYSIS

On review, we recognize the trial court has wide discretion in dividing marital property, and we may not disturb the trial court's rulings on property division issues unless we find the trial court abused its discretion. *Maclean v. Middleton*, 419 S.W.3d 755, 772 (Ky. App. 2014) (internal quotation marks omitted). The test for abuse of discretion is whether the trial court's decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

We note at the outset that Allison did not file an appellee brief.

Kentucky Rule of Appellate Procedure ("RAP") 31(H)(3) provides:

> If the appellee's brief has not been filed within the time allowed, the court may: (a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

However, this Court may decline to exercise any of the options provided for in RAP 31(H)(3). *Strong v. Gary*, 673 S.W.3d 77, 79 (Ky. App. 2023) (citing *Roberts v. Bucci*, 218 S.W.3d 395, 296 (Ky. App. 2007)). Here, we find none of the options appropriate and will proceed with our review.

## A. **Kentucky marital residence**

KRS[1] 403.190 governs the disposition of property in a proceeding for dissolution of marriage. It provides, in pertinent part:

> [T]he court shall assign each spouse's property to him. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors including:
>
> (a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;
>
> (b) Value of the property set apart to each spouse;
>
> (c) Duration of the marriage; and

---

[1] Kentucky Revised Statutes.

> (d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

KRS 403.190(1). Focusing on the value of the marital residence in Kentucky, which the parties agree is valued at around $350,000.000 to $550,000.000 with an $80,000.000 payoff amount on the mortgage note, Carmine claims a more financially equal division is warranted.

Without citation to authority, Carmine contends Allison received an unfair windfall and "[t]here is no justifiable explanation as to why Allison is entitled to nearly 100 percent of the marital estate and is not required to refinance the property." (Appellant Br. at 11). Carmine suggests that because he paid the bills for the Kentucky residence during marriage and after separation, Allison receiving the property could not have been "based upon Allison being a sole/primary contributor." (*Id.*)

As Carmine correctly concedes, a trial court is not obligated to divide the marital property equally. *Smith v. Smith*, 235 S.W.3d 1, 6 (Ky. App. 2006). A trial court enjoys wide discretion in dividing marital property "in just proportions." *Id.* (citing KRS 403.190(1)). Additionally, an award of a single asset in its entirety to one party is not necessarily an abuse of discretion. *See Hempel v. Hempel*, 380

S.W.3d 549 (Ky. App. 2012). Carmine's assertion fails to consider several facts noted by the trial court, including: he owns multiple out-of-state properties, he was already living in New York at the time of dissolution and, significantly, the Kentucky property is the *only* property Allison owns, and it is where she raises their minor child. The property is also home to various pets and livestock, making even a forced sale of the property challenging.

We find unpersuasive Carmine's argument that Allison was not a primary contributor to the marital property. True, it was almost exclusively Carmine who supported the Kentucky residence financially. However, Carmine was rarely present at the Kentucky home. Maintenance, upkeep, and other homemaking responsibilities fell entirely on Allison. We reiterate that the KRS 403.190 factors encompass far more than mere financial contribution, which appears to be the only way in which Carmine regularly supported the home.

The trial court made ample findings of fact in its order and gave effect to the factors listed in KRS 403.190. The court specifically noted each party's contribution to the marriage, duration of the marriage, economic circumstances of each party, out-of-state property owned by Carmine, Allison's health limitations, and that A.S. primarily resided with Allison in Kentucky. Although at first blush it may appear inequitable that one party received the overwhelming majority of the marital estate, application of the KRS 403.190 factors to the trial court's decision

does not rise to the level of abuse of discretion.  We cannot say the trial court abused its considerable discretion in awarding the marital estate to Allison.

## B. **Permanent maintenance**

The amount and duration of maintenance is within the sound discretion of the trial court.  *Gentry v. Gentry*, 798 S.W.2d 928, 937 (Ky. 1990).  We review the trial court's factual findings for clear error and the maintenance decision for an abuse of discretion.  *Age v. Age*, 340 S.W.3d 88, 94-95 (Ky. App. 2011).

KRS 403.200(1) provides in pertinent part that a trial court may only award maintenance if it finds the spouse seeking maintenance "(a) [l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (b) [i]s unable to support himself through appropriate employment[.]"  If a court finds the aforementioned to apply, the court must then determine a just amount and duration after considering all relevant factors, including:

> (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) The standard of living established during the marriage;

(d) The duration of marriage;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

KRS 403.200(2). "[I]n situations where the marriage was long term, the dependent spouse is near retirement age, the discrepancy in incomes is great, or the prospects for self-sufficiency appear dismal," our courts have awarded maintenance in greater amounts and for longer durations than what would be sufficient for rehabilitation purposes. *Powell v. Powell*, 107 S.W.3d 222, 224 (Ky. 2003) (citing *Clark v. Clark*, 782 S.W.2d 56, 61 (Ky. App. 1990)).

Allison provided a financial disclosure that calculated her expenses at $11,509.33 per month. (R. at 82). Carmine's financial disclosure calculated $6,710.00 per month. (R. at 68). By agreement of the parties, Allison has not worked outside the home since A.S. was born, and Carmine "has always been the breadwinner during their relationship and has earned enough income to comfortably support two households" with Carmine covering the expenses for Allison and A.S.'s home in Kentucky in addition to his own in New York. (R. at 137-44). Carmine lived in New York for much of the relationship and spent only

brief periods of time with Allison and A.S. in Kentucky; this was the lifestyle to which the parties grew accustomed.

Indeed, the court considered Carmine's testimony as to his "substantial benefits through his retirement from his previous employ[ment]" as an operating engineer for the City of New York, and multiple other sources of income, including rental properties and investment income valued at least $400,000. (R. at 137-38). Though Carmine did not establish his own income with documentary evidence, he testified he receives reliable monthly income in excess of $14,000; concomitantly, Allison testified to her belief that his annual income is in excess of $250,000. For purposes of calculating temporary maintenance, the court found Carmine's annual salary to be $200,000.00 and imputed to Allison the local prevailing salary of $2,600.00 per month. (R. at 145).

In addition to the foregoing, the family court considered the other factors of KRS 403.200(2), including the parties' ages, found Allison to "lack[] sufficient property . . . to provide for her reasonable needs and she is unable to support herself through appropriate employment," and ordered Carmine to pay $8,500.00 per month in temporary maintenance. (R. at 139-40). This was later

reduced to permanent maintenance in the amount of $7,500.00 in the Decree of Dissolution.[2]

The family court properly considered several factors when awarding maintenance, including those delineated in KRS 403.200(2). Its findings with respect to maintenance, both temporary and permanent, were extensive and spanned several pages. Consequently, despite Carmine's arguments to the contrary, the family court's calculation of the parties' expenses and income is supported by substantial evidence and not clearly erroneous.

## CONCLUSION

For the foregoing reasons, we AFFIRM the trial court's division of the marital estate and award of maintenance.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Jason Rapp
Lexington, Kentucky

---

[2] Though the court does not explicitly state the reason for the reduction, it appears based upon the record that the reduction was the equitable result of the overarching division of property.