Julie Ann GASKILL, Appellant,

v.

Jon Kevin ROBBINS, Appellee.

No. 2010–CA–001814–MR.

Court of Appeals of Kentucky.

Feb. 3, 2012.

H. Jefferson Herbert, Jr., Brian K. Pack, Glasgow, KY, for appellant.

Anita M. Britton, Lexington, KY, David A. Lanphear, Bowling Green, KY, for appellee.

Before DIXON, LAMBERT, and VANMETER, Judges.

## OPINION

LAMBERT, Judge.

Julie Ann Gaskill appeals from a Warren Family Court's findings of fact, conclusions of law, and judgment with regard to the valuation and distribution of an oral surgery practice in dissolution proceedings. Finding no error in the trial court's judgment, we affirm.

Gaskill is fifty-two years old. She is self-employed as an oral surgeon in a sole proprietorship that she established in 1991. The oral surgery practice employs several staff members who keep records, schedule patients, and assist in surgery. When Gaskill established the practice, she was married to Jon Kevin Robbins. In addition to his outside employment, Robbins occasionally assisted Gaskill's oral surgery practice by performing a variety of administrative duties. Gaskill remains the only oral and maxillofacial surgeon employed by the practice.

Over the course of their marriage, Gaskill earned approximately 90% of the marital income. The couple amassed a marital estate valued at over $4 million. The oral surgery practice was the largest marital asset held by the couple.

On October 24, 2003, Gaskill petitioned the Warren Family Court for dissolution of her marriage to Robbins. Although many issues were raised during the dissolution proceedings, the issues and facts in this appeal concern the trial court's valuation of the oral surgery center.

The trial court held an eight-day trial that included testimony from twenty-seven

witnesses. Among those witnesses were two certified public accountants who testified about the proper valuation of the oral surgery practice. First, Steve Wheeler, Gaskill's CPA, testified that he compiled two separate reports regarding the practice's value. Wheeler conducted an in-depth evaluation of the oral surgery practice's records, financial holdings, liabilities, and even interviewed employees. Wheeler testified that he determined the value of the practice by comparing its assets and liabilities. He opined that the asset-liability method was the most accurate based upon the facts that the business was not actually for sale and there were no available sales figures for similarly situation practices.

In his first report, Wheeler concluded the practice's value, as of December 31, 2003, was $237,000.00. Following his initial valuation, Wheeler discounted the business valuation by 10% for lack of marketability, or, as Wheeler described, "the ability to quickly convert property to cash at a minimal cost." Wheeler originally discounted the practice's value by 23%.

Wheeler subsequently prepared a report that concluded that the practice's value, as of December 2004, was $114,000. In the 2004 report, Wheeler once again used an asset and liability analysis to determine value. However, in 2004, the practice had a significant drop in cash.

Richard Callahan, a CPA hired by Robbins to evaluate the oral surgery center, also testified at trial. Although Callahan used Wheeler's data to evaluate the business, he used four different calculation methods that each resulted in a different value. Callahan then used those four values and averaged them together to arrive at the average value.

Callahan's report also differed from Wheeler's evaluation in other respects. Where Wheeler's method doubled employee wages to allow for the cost of replacing personnel, Callahan claimed that a willing buyer could employ the same personnel. Finally, Callahan valued the oral surgery practice at $669,075.00.

Finding Callahan's view to be more credible, the trial court fixed the value of the practice at $669,075.00. Based upon this valuation, Robbins received a large sum of cash. Gaskill appealed the award.

On appeal, the Kentucky Supreme Court remanded the case to the Warren Circuit Court based upon its conclusions that: (1) the trial court erred in failing to recognize the presence of both business and personal goodwill; and (2) that the trial court erred by using an arbitrary average of numbers to determine the value of the oral surgery practice. *Gaskill v. Robbins*, 282 S.W.3d 306 (Ky.2009). The Supreme Court ordered the trial court to re-value the practice. *Id.* On remand, the trial court determined that the oral surgery practice was valued at $237,000.00. This appeal follows.

■ Kentucky Revised Statutes (KRS) 403.190(1) instructs trial courts to divide marital property in "just proportions." Appellate courts will not disturb a trial court's judgment, division, or valuations in a dissolution action unless the court's decision is contrary to the weight of the evidence. *Clark v. Clark*, 782 S.W.2d 56, 58 (Ky.App.1990). Thus, we examine the methods utilized by the trial court to determine whether the trial court clearly erred in valuing the oral surgery practice.

■ Gaskill first argues that the trial court abused its discretion by failing to adopt the business valuation performed closest to the date of the decree. We disagree. Contrary to Gaskill's assertions, there is no presumption that assets should be valued within close proximity to the date of the decree. While other jurisdictions have applied a "book value" or "fair

market value" approach to valuation, Kentucky law has not specifically adopted one method of valuation. *Id.* at 59. The trial court must consider a variety of factors to properly value a business, including which calculations best represent the business's value.

■ Although Gaskill argues that the Courts in *Stallings v. Stallings,* 606 S.W.2d 163 (Ky.1980), and *Clark,* 782 S.W.2d at 56, concluded that the trial courts abused their discretion by valuing assets on dates other than the dates of the decrees, we agree with the trial court that those cases are factually and legally distinguishable. *Stallings* questioned whether property acquired after separation but prior to dissolution should be considered marital property. In *Clark,* the Court concluded that a pension and profit sharing plan should have been valued at date of dissolution rather than the date of the qualified domestic relations order. However, as the Court in *Clark* acknowledged, there is no bright-line method used to evaluate property. *Clark,* 782 S.W.2d at 59. "The task of the appellate court is to determine whether the trial court's approach reasonably approximately (sic) the net value[.]" *Id.* Our review indicates that the court's decision to value the oral surgery practice based upon the 2003 evaluation was well-reasoned and based upon ample evidence. As the trial court stated in its order:

> It is impractical for an exact snapshot of value to be taken of a business in every case on the day of the divorce decree. These take time and thoughtful inspection to complete, and a valuation must be provided by an expert for consideration at trial, which can be long before the Court dissolves the marriage by decree. The Court should not choose one valuation over another simply because the date of the valuation is closer in time

to the Decree, especially if the other valuation more accurately reflects the true value of the business entity. Additionally, a later valuation would be improper if an intentional dissipation of the business value had occurred.

Wheeler testified that 2004 was a very unusual year for the oral surgery practice based upon a significant decrease in cash held by the business. Although the practice's operating expenses remained fairly consistent, its revenues dropped dramatically. During this time, the practice was solely within Gaskill's control. She controlled the number of patients seen and accounts receivables generated.

Gaskill argues that the trial court erroneously based its decision to use the 2003 report upon its previous finding that she dissipated marital assets in 2004 by transferring $199,000.00 to her mother. Gaskill argues that the trial court should not have considered the dissipation because Robbins received a specific property award to compensate for his loss. Our review, however, indicates that the trial court used the dissipation as a credibility factor. While the trial court acknowledged that Robbins had been previously compensated for the dissipation, the court noted that Gaskill failed to disclose the dissipation to Wheeler. The court also noted that Gaskill made frequent fund transfers from the business without a proper accounting.

In light of Gaskill's sole control of the practice, her failure to disclose relevant transfers and dissipations, and the unusually low income generated by the practice in 2004, ample evidence existed in the record to support the trial court's decision to base the oral surgery practice's valuation upon the 2003 report.

With regard to valuation, Gaskill also argues that the trial court abused its discretion by failing to apply a 23% discount rate to the assigned value based upon the

2004 report. As previously stated, we find no error in the trial court's decision to base the valuation upon the 2003 report. Therefore, Gaskill's arguments are moot.

█ Finally, Gaskill claims that the trial court should have awarded her post-judgment interest on the money that she overpaid Robbins in accordance with the trial court's original valuation of the surgery practice. Gaskill argues that she is entitled to interest because Robbins temporarily enjoyed the benefit of funds that belonged to Gaskill.

█ When the Kentucky Supreme Court vacated the judgment, the original valuation was wiped away. "[A] judgment which has been reversed is as though it had never been." *Maynard v. Maynard,* 251 S.W.2d 454, 456 (Ky.1952). The trial court provided, ". . . the value of the business was remanded and thus the matter has not yet been reduced to a final judgment. As such the payment cannot bear interest."

Kentucky Courts have long held that prejudgment interest is a matter of right with regard to liquidated claims but is a matter within the trial court's discretion in unliquidated claims. *Nucor Corp. v. General Electric Co.,* 812 S.W.2d 136, 141 (Ky. 1991). Given that Gaskill's claim against the overpayment received by Robbins is an unliquidated debt, and given the trial court's well documented reasoning, we conclude that the trial court did not abuse its discretion in denying Gaskill's request for interest.

Based upon the foregoing reasons, we affirm the Warren Family Court's judgment.

ALL CONCUR.