RENDERED:  FEBRUARY 27, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1138-MR

DUSTIN ALLEN ANDERSON                                              APPELLANT

APPEAL FROM CUMBERLAND CIRCUIT COURT
v.        HONORABLE DAVID L. WILLIAMS, JUDGE
ACTION NO. 23-CI-00017

KRISTEN NICOLE ANDERSON[1]                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, McNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Dustin Allen Anderson (Dustin), appeals the August 21,

2024, order of the Cumberland Circuit Court regarding the division of property and

child-related issues in the parties' dissolution of marriage action.  The court's order

adopted in part and overruled in part recommendations of the court's Domestic

---

[1] Appellee's name was spelled as Kristin and Kristen in the underlying record.  The Court has chosen to use Kristen since it was the spelling utilized in the notice of appeal.

Relations Commissioner (DRC) and further made additional findings.[2]  After

careful review, we affirm.

## BACKGROUND

Dustin and Kristen Nicole Anderson (Kristen) were married in 2015

and had two children born during their marriage.  Dustin filed a petition for

dissolution of marriage in February of 2023.  In May of 2023, the circuit court

issued temporary orders concerning the children and the parties' finances,

reserving the issue of child support.  The matter was then referred for a hearing

before the DRC on August 15, 2023.  Prior to the hearing, the parties reached an

agreement on the division of some vehicles and personal property.  Dustin had

provided a list of his nonmarital property which Kristen agreed to at the hearing.

The parties agreed Kristen would provide her list subsequent to the DRC hearing.

Dustin agreed Kristen could retain the property on her list unless he disagreed

thereto.  The remaining issues consisted of the division of the parties' marital

property and timesharing.  The parties agreed to reserve the division of their

retirement accounts.  Notably, child support was not addressed at all during the

hearing.

Approximately a year prior to marriage, the parties had purchased

their residence for $200,000.  However, the deed and the mortgage on the marital

---

[2] Cumberland County does not have a family court judge.

residence were solely in Dustin's name. Notwithstanding, both parties testified Kristen obtained loans which were used towards the downpayment on the residence. During the DRC hearing, neither party knew when the loans were paid off or the amounts paid prior and during the marriage. Kristen indicated that documentation about the loans would be provided to Dustin's counsel after the hearing, to which Dustin's counsel did not object. No proof was given by either party about the current value of the residence.

At the DRC hearing, Kristen, as well as a maternal aunt and grandmother, testified that Kristen had been the primary caregiver of the children during the marriage. All witnesses acknowledged that there had been some behavioral issues with the oldest child (who was five years old at the time) after the parties separated, namely some distress during exchanges for Dustin's overnight timesharing. Kristen also had concerns with Dustin being able to adhere to the children's routines while he had them for overnight timesharing.

In late December of 2023, the DRC issued his report and recommendations to the circuit court. The DRC acknowledged the parties' agreement regarding nonmarital personal property. The DRC assigned the residence to Dustin as his nonmarital property, based upon the deed, and assigned each party half of the total equity in the property, less the amount of the remaining mortgage. The DRC also recommended an equal timesharing arrangement for the

children after analyzing the best interest factors set forth in Kentucky Revised Statutes (KRS) 403.270(2).

In January 2024, Kristen filed exceptions to the DRC's recommendations, taking issue with the DRC's findings that she failed to provide documentation relating to the loans she obtained for the residence as well as a list of her nonmarital property; she argued that she had provided the documents to Dustin's counsel subsequent to the DRC hearing. Kristen also took issue with the recommendation of equal timesharing and noted the DRC failed to mention that the division of the parties' retirement accounts had been reserved, and that child support was still a pending issue. Dustin did not file exceptions to the DRC report.

The circuit court heard Kristen's exceptions on February 29, 2024. At the hearing, Kristen's counsel provided loan documentation that showed Kristen had obtained loans in the amount of $27,000, which the parties used as a downpayment on the residence.[3] Dustin's counsel objected to the circuit court's reliance on these documents on the basis that Kristen did not submit the documentation during the DRC hearing. Kristen's counsel also presented an appraisal of the residence, obtained after the DRC hearing, which valued the residence at $280,000. The circuit court allowed the appraisal to be filed into the

---

[3] The parties previously testified that Kristen Nicole Anderson (Kristen) had obtained $17,000 in loans during the Domestic Relations Commissioner (DRC) hearing.

record, and while Dustin's counsel disagreed with the value, he made no objection to the appraisal's filing. Following this hearing, the circuit court entered a bifurcated decree of dissolution in March of 2024 and instructed counsel to file memorandums briefing the remaining issues. Neither party objected, nor did they request an additional hearing. Both parties filed memorandums as instructed.

On August 21, 2024, the circuit court entered an "Order Adopting in Part and Overruling in Part the Recommendations of the Domestic Relations Commissioner & Making Additional Findings." Record at 161-176. In that order, the circuit court adopted some of the findings made by the DRC. The court additionally found that Kristen had provided $27,000 as a downpayment for the home using the two loans she obtained, and that the parties had exchanged documentation about their retirement accounts and agreed upon the amounts therein. Dustin had a 401k retirement account which contained a balance of $23,095.38 at the time of the parties' marriage and a balance of $341,503.91 at the time of the parties' bifurcated decree of divorce.[4] Kristen had a retirement account through the Teacher's Retirement System of the State of Kentucky with the value of $48,446.49. The circuit court also noted its concern that the DRC did not

_____

[4] The circuit court also found that Dustin Allen Anderson (Dustin) had another retirement account which he had prior to the marriage. The circuit court characterized the entirety of that account as a nonmarital asset and assigned it to Dustin. Neither party challenges this ruling on appeal.

address child support or provide any information about the parties' agreement that the division of the retirement accounts was reserved for further determination.

Relying upon the appraisal value of $280,000 for the home, the circuit court determined that the entire equity in the marital residence was a marital asset and the difference between the remaining balance of the mortgage and $280,000 should be divided equally between the parties. Notably, there was no determination that Kristen or Dustin had any nonmarital interest in the equity of the residence.

The circuit court did not address an issue raised in Dustin's memorandum regarding two pieces of furniture in the residence, namely a couch and bedroom suit.[5] Dustin argues the furniture was his nonmarital property and that Kristen's claim that the property was nonmarital was without merit. Apparently, Kristen had listed this property on her nonmarital property list submitted after the DRC hearing. As noted, the DRC reported that the parties had agreed to the division of nonmarital property as submitted by the parties. Dustin did not file an objection to any findings regarding nonmarital property, including that based on Kristen's list submitted after the DRC hearing. The circuit court ruled that the parties had previously agreed to a division of personal property and no evidence had been presented to the contrary to the court.

_____

[5] Dustin raised this issue for the first time in his memorandum to the circuit court. Record at 97.

As concerns the retirement accounts, the circuit court determined that the $23,095.38 in Dustin's 401K before marriage was nonmarital and that the remaining $318,408.53 was marital. The court also determined that the entirety of Kristen's retirement account was marital and ordered for the difference between the marital portion of Dustin's 401K and Kristen's retirement account to be divided equally between the parties.

Regarding the children, the circuit court rejected the DRC's recommendation and determined that the presumption of equal timesharing had been rebutted in Kristen's favor after conducting an analysis of the factors set out in KRS 403.270. The court laid out a timesharing schedule in which it stated time with each parent was maximized and included a provision that the timesharing arrangement would revert to equal time when the youngest child turned four years old. The circuit court also ordered that the parties would submit to a child support calculation based on a "Kentucky Child Support Worksheet," to be calculated by the Cumberland County Child Support Office. Record at 194. The order did not address child support arrearages.

Dustin timely filed a notice of appeal on September 13, 2024.

ANALYSIS

To begin, we will first address the issues raised by Dustin regarding the disputed furniture and child support. The circuit court's division and allocation

-7-

of the furniture in question was based upon the purported agreement by the parties before the DRC regarding the division of the nonmarital property.  As noted, this included the couch and bedroom suit set out on Kristen's list submitted after the DRC hearing, which Dustin disputed.  Effectively, the circuit court adopted the DRC's recommendation regarding the nonmarital property as a finding by the court.  The court did not address the two pieces of furniture.

What is problematic for this appeal is twofold:  First, Dustin did not file an exception to the DRC report even though he had received Kristen's list of nonmarital property in September of 2023.  The DRC report was filed on December 27, 2023.  Any objection was due to be filed ten days thereafter.  (Kentucky Family Court Rules of Practice and Procedure (FCRPP) 4(4)(a)).  Second, and more importantly, upon entry of the circuit court's final order, Dustin was aware that the circuit court did not address his argument set out in his memorandum regarding the two pieces of furniture.  In Kentucky, the law is clear that when the circuit court makes findings of fact that are incomplete, it is incumbent upon a party to file a motion requesting specific findings of fact under Kentucky Rules of Civil Procedure (CR) 52.04.  *Anderson v. Johnson*, 350 S.W.3d 453, 458 (Ky. 2011).  The failure of a party to do so constitutes a waiver of such error.  *Polley v. Allen*, 132 S.W.3d 223, 230 (Ky. App. 2004).

In this case, the circuit court made findings of fact relevant to the nonmarital property by effectively adopting the DRC's position. However, Dustin failed to file a motion for more definite findings per CR 52.04. Hence, this error is not properly preserved for appellate review and was waived. We thus decline to address the issue in this appeal.

Similarly, Dustin seeks our review of child support and presumably possible arrearages, after our review of the court's timesharing order therein. Again, we do not believe this issue is properly before this Court on appeal at this time. Child support calculations were deferred by both the DRC and circuit court to the Cumberland County Attorney Child Support Office. We assume this is a customary practice in Cumberland County that Dustin is not challenging. We must also assume that child support was to be calculated per the statutory guidelines of KRS 403.212. Dustin also seeks direction of whether child support could be assessed "retroactively." Dustin's Brief at 17-18. However, the circuit court did not enter a final child support order below. Accordingly, the issue is not ripe for our review. Additionally, any opinion at this time would be advisory, which we decline to do. *Commonwealth v. Hughes*, 873 S.W.2d 828, 829-30 (Ky. 1994). We further note that after the filing of this appeal, Kristen has filed a child support motion in the circuit court which has been held in abeyance pending the resolution of this appeal. When this appeal is final, the circuit court may address the child

support issue as a post-decree matter in accordance with *Anderson*, 350 S.W.3d 458, whereupon either party may file an appeal from the final order resolving child support, including any arrearages.

Dustin's remaining arguments concern the conduct of Kristen's counsel and the circuit court's actions after the DRC hearing, the final division of marital property, and timesharing. We take these in turn.

In Dustin's memorandum to the circuit court following the hearing below, he made a general objection that the circuit court erred in allowing the "entire practice of briefing the issues anew, as well as allowing for the introduction of new evidence/exhibits, following a final hearing with the Domestic Relations Commissioner." Record at 94. He continues this argument on appeal, arguing that the circuit court failed to address the actions of Kristen and her counsel below, which he claims were dilatory. Dustin's Brief at 22-23. These actions include Kristen's filing of her final memorandum on the issues below two days after Dustin's instead of contemporaneously as ordered, and not introducing into evidence the appraisal or the documents concerning Kristen's loans during the DRC hearing.

A circuit court has broad discretion in how it conducts its proceedings, including how the court addresses violations of its orders, disputes over the discovery process, and the imposition of time limits that govern the proceedings.

*See Wilson v. Commonwealth*, 381 S.W.3d 180, 191 (Ky. 2012); *see also Furnish v. Commonwealth*, 267 S.W.3d 656, 664 (Ky. 2007); *Sexton v. Bates*, 41 S.W.3d 452, 455 (Ky. App. 2001). Furthermore, "[i]t is well-established that a circuit court has 'the broadest possible discretion with respect to the use it makes of reports' or recommendations of a DRC." *Hartlage v. Hartlage*, 601 S.W.3d 495, 498 (Ky. App. 2020) (citing *Eiland v. Ferrell*, 937 S.W.2d 713, 716 (Ky. 1997)). A circuit court may accept the recommendations of a DRC, reject them, modify them, receive further evidence, or "recommit" them for further hearing. *Hartlage*, 601 S.W.3d at 499; FCRPP 4(4)(a).

In its ruling, the circuit court acknowledged that Kristen's counsel was late with some of her filings but was otherwise substantially compliant. The court also cited to FCRPP 4, noting its concerns with the insufficiency of the DRC's recommendations, and determined further action by the circuit court was necessary. This action included allowing the introduction of the residence appraisal at the circuit court hearing and directing the parties to file memorandums on the issues after the hearing so that the court could take the matter under submission. Pertinent to our review, it is clear that FCRPP 4 does not contemplate that proceedings before a DRC would be final. Rather, the rule provides for recommendations to be made by the DRC to the court. Likewise, the local rule cited by Dustin provides that additional evidence may be considered at the

-11-

discretion of the court. This is further reflected in the parties' agreement to exchange documents after the hearing, and the reservation of the division of retirement accounts for the court. Additionally, Dustin did not initially object to Kristen providing documents after the DRC hearing; Dustin did not file any exceptions to the DRC recommendations himself; and Dustin did not initially object to the filing of Kristen's appraisal at the circuit court hearing in February of 2024. Given the circumstances, we agree with the circuit court's rulings and conclude the court did not abuse its discretion in the court's handling of the DRC recommendations or addressing the actions of Kristen and her counsel.

Dustin next takes issue with the division of the parties' marital property, namely the circuit court's decisions regarding the marital residence and the parties' retirement accounts. In dividing property in a divorce proceeding, the circuit court must follow a three-step process: "(1) the trial court first characterizes each item of property as marital or nonmarital; (2) the trial court then assigns each party's nonmarital property to that party; and (3) finally, the trial court equitably divides the marital property between the parties." *Travis v. Travis*, 59 S.W.3d 904, 909 (Ky. 2001) (footnotes omitted).

There is a statutory presumption that all property acquired during the marriage is marital. KRS 403.190(3). Once property has been classified and nonmarital property has been assigned, a circuit court must then divide marital

-12-

property in just proportions. KRS 403.190(1); *Smith v. Smith*, 235 S.W.3d 1, 6 (Ky. App. 2006). In dividing property, a circuit court may be required to value it; in making such valuations the circuit court may consider different dates of valuation and other relevant factors. *See Gaskill v. Robbins*, 361 S.W.3d 337, 340 (Ky. App. 2012).

As concerns the classification of property, "[t]he question of whether an item is marital or nonmarital is reviewed under a two-tiered scrutiny in which the factual findings made by the court are reviewed under the clearly erroneous standard and the ultimate legal conclusion denominating the item as marital or nonmarital is reviewed *de novo*." *Smith*, 235 S.W.3d at 6 (citation omitted). A judgment is not clearly erroneous if it is supported by substantial evidence, which is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted). And, this Court will not disturb the lower court's ruling on a property division issue unless the court has abused its discretion. *Smith*, 235 S.W.3d at 6. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Regarding the marital residence, Dustin argues that the circuit court erred in valuing the home at $280,000, not characterizing the home as his nonmarital property, and dividing the equity in the home equally rather than proportionally based on the parties' incomes.

As mentioned in our discussion above, Dustin's dispute with the circuit court's valuation of the marital home is based on his argument that Kristen's appraisal should have been presented during the DRC hearing rather than later at the circuit court hearing in February of 2024. We disagree. As noted, while Dustin's counsel disagreed with the appraisal valuation at the February of 2024, hearing, Dustin did not object to the actual filing of the appraisal into the record. Furthermore, Dustin never requested a separate hearing on the issue, or filed a separate appraisal on Dustin's behalf. The circuit court explicitly stated that it would accept an appraisal from Dustin and gave him the opportunity to obtain one if he so desired in February of 2024. Dustin had at least sixty days to obtain an appraisal or to rebut Kristen's appraisal before filing his memorandum in May of 2024, which he failed to do. Thus, we do not believe the circuit court abused its discretion in relying on Kristen's appraisal to value the residence at $280,000.

Dustin next argues that under the statute of frauds, the marital residence should have been characterized as his nonmarital property because it was acquired before the parties' marriage and deeded solely to him. *See* KRS

371.010(6). However, the fact that Kristen's name was not on the deed is not dispositive of the home's characterization. *See Basham v. Basham*, 710 S.W.3d 1, 7 (Ky. App. 2025). The circuit court explicitly characterized the entire equity in the home as marital, as did the DRC.

Dustin argues at length about Kristen's limited nonmarital contributions to the home's equity; however, this line of argument is irrelevant. We observe the circuit court, like the DRC, did not characterize any portion of the home's equity as nonmarital.[6] Dustin also did not provide substantial evidence that he made any nonmarital contributions. Thus, we find no error in the circuit court's characterization of the equity in the marital residence.

In the division of the equity of the marital residence, both the DRC and circuit court recognized the parties' testimony that they intended for the residence to be marital when it was purchased, and both parties contributed to the property's equity during the marriage. And, both the DRC and circuit court determined that the equity should be divided equally between the parties based on their respective contributions.[7] In dividing the property, the circuit court addressed

---

[6] Though one might question why the circuit court did not assign a nonmarital portion of the equity in the home to Kristen considering its findings concerning her loans being used as a downpayment, Kristen has not challenged this on appeal.

[7] The circuit court in particular considered Kristen's contributions as a homemaker, which is a factor to be considered under Kentucky Revised Statutes 403.190(1)(a).

the factors set out in KRS 403.190(1). *See Thielmeier v. Thielmeier*, 664 S.W.3d 563, 574 (Ky. 2022). Having complied with applicable law, we conclude the circuit court's findings were not clearly erroneous and otherwise supported by substantial evidence.

As concerns the parties' retirement accounts, Dustin does not challenge the court's classification of the accounts. Rather, he argues that the circuit court erred in equally dividing the marital portion of his 401K (offset by the amount of Kristen's retirement account) rather than proportionally to the parties' incomes. In support, he asserts that Kristen's retirement account through the Kentucky Teacher's Retirement System has benefits that "cannot be quantified or divided by [the] courts." Dustin's Brief at 19. However, absolutely no evidence was presented before the DRC or at the court hearing concerning these unquantified benefits, nor was there a request made to introduce such evidence. Dustin also argues that division should have been made in his favor because Kristen did not address the issue in her memorandum filed below. Such a requirement would run contrary to KRS 403.190 as it is the responsibility of the circuit court to divide all marital property in just proportions. We find no merit in this argument by Dustin nor did the court abuse its discretion regarding the same.

Finally, we address Dustin's argument concerning timesharing. There is no dispute that the court's ruling in this case constituted an initial custody

determination which is governed by KRS 403.270. *Layman v. Bohanon*, 599 S.W.3d 423, 430 (Ky. 2020). "Under KRS 403.270, an initial determination of custody requires consideration of the best interests of the child, with a rebuttable presumption that joint custody and equal parenting time [timesharing] is in the child's best interests." *Id.* "When an appellate court reviews the decision in a child custody case, the test is whether the findings of the trial judge were clearly erroneous or that he [or she] abused his [or her] discretion." *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008) (citing *Eviston v. Eviston*, 507 S.W.2d 153 (Ky.1974)). In weighing the evidence before it, we shall give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01; *see also Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). "[I]n reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion." *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008) (citations omitted).

Dustin does not challenge the custody ruling by the court, but rather the court's ruling on timesharing. In this case, both the DRC and circuit court made significant findings concerning the best interests of the children while considering the factors outlined in KRS 403.270. Though the DRC recommended that the parties should have equal timesharing, the circuit court determined that the

-17-

rebuttable presumption of equal timesharing had been overcome and ordered a less than equal timesharing schedule in favor of Kristen while taking care to maximize the amount of time the children spend with Dustin. Dustin maintains that the circuit court should have accepted the DRC's findings, because the circuit court took no further testimony about the children from the parties. However, as mentioned above, the circuit court was not bound to the DRC's recommendations and has broad discretion in accepting, rejecting, or modifying those recommendations. *Hartlage*, 601 S.W.3d at 498; CR 53.05; FCRPP 4. From our review of the record on appeal and the findings made, substantial evidence exists which supports the circuit court's findings, and therefore we again find no abuse of discretion in the court's timesharing ruling.

## CONCLUSION

For the foregoing reasons, we affirm the Cumberland Circuit Court's August 21, 2024, order.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| W. Matthew Garmon<br>Monticello, Kentucky | Angela M. Capps<br>Columbia, Kentucky |